O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF CALIFORNIA INC., a California nonprofit religious corporation; INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF ARIZONA, an Arizona nonprofit religious corporation doing business as BLUE STAR, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a California Municipal Corporation; CITY OF LOS ANGELES DEPARTMENT OF RECREATION AND PARKS, a division of the City of Los Angeles, <br><br> Defendants. | Case No. CV 15-01320 DDP (AGRx) <br><br> **ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> [Dkt. No. 10] |

Plaintiffs International Society for Krishna Consciousness of California and International Society for Krishna Consciousness of Arizona (collectively, "ISKCON") wish to be able to proselytize, including selling T-shirts bearing their message, in the vicinity

of Griffith Observatory in Griffith Park.  Although Defendants are currently allowed to do so, park rangers have restricted their activity to a "designated area" at the northeast[1] end of the Observatory property.  (Mem. P. & A. at 5:6-13.)

 Plaintiffs therefore seek a temporary restraining order ("TRO") preventing city officials from

> warning, citing, arresting, prosecuting, harassing, or otherwise enforcing an unwritten rule or policy the prohibits the sale of religious literature, and the solicitation of donations in conjunction with the distribution of religious literature, as well as the sale of message-bearing T-shirts and other merchandise, on the public walkways and plaza areas of the Griffith Observatory.

(Proposed Order, attached to Application.)  Plaintiffs also seek an order to show cause why a preliminary injunction (presumably along the same lines) should not be granted.  (Proposed Order to Show Cause, attached to Application.)  The Court, having considered Plaintiffs' submission, denies the Application for a TRO but grants the request for an order to show cause.

 A preliminary injunction is ordinarily granted on a noticed motion.  Fed. R. Civ. P. 65(a)(1).  Only extraordinary circumstances justify issuance of an injunction ex parte, without giving the opposing party an opportunity to respond:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney

---

[1] Plaintiffs allege that the designated area is at the southeast corner, but aerial photos seem to show otherwise.  (See, e.g., Decl. David Liberman, Ex. N.)

2

1       only if (A) specific facts in an affidavit or a verified
2       complaint clearly show that immediate and irreparable injury,
3       loss, or damage will result to the movant before the adverse
4       party can be heard in opposition; and (B) the movant's
5       attorney certifies in writing any efforts made to give notice
6       and the reasons why it should not be required.
7 Fed. R. Civ. P. 65(b)(1).
8     Plaintiffs have served Defendants with a copy of the
9 Application, which may have provided city officials with at least
10 constructive notice of its existence. But the Application provides
11 no meaningful opportunity for the City to be "heard in opposition,"
12 which is the point of ordinarily requiring a properly noticed
13 motion to obtain an injunction. As the Supreme Court has noted,
14 "our entire jurisprudence runs counter to the notion of court
15 action taken before reasonable notice and an opportunity to be
16 heard has been granted both sides of a dispute." <u>Granny Goose
17 Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70
18 of Alameda Cnty.</u>, 415 U.S. 423, 439 (1974). The use of ex parte
19 TRO's "should be restricted to serving their underlying purpose of
20 preserving the status quo and preventing irreparable harm just so
21 long as is necessary to hold a hearing, and no longer." <u>Id.</u> Thus,
22 the Ninth Circuit has limited the issuance of ex parte TRO's to a
23 "very few circumstances." <u>Reno Air Racing Ass'n., Inc. v. McCord</u>,
24 452 F.3d 1126, 1131 (9th Cir. 2006). An injunction may be issued
25 ex parte, for example, when the adverse party is unknown or cannot
26 be located. <u>Id.</u> Or it may be issued where "notice to the
27 defendant would render fruitless the further prosecution of the
28

3

action." Id. Neither of those limited circumstances is present here.

The Court notes that Plaintiffs' attorney has not separately certified in writing a specific set of reasons why notice (and the concomitant opportunity to be heard) should not be required.[2] Plaintiffs do argue, delving into the elements required from preliminary injunctive relief generally,[3] that they will suffer irreparable injury. Plaintiffs cite to Elrod v. Burns[4] and Am.-Arab Anti-Discrimination Comm. v. Reno[5] for the proposition that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." But neither Am.-Arab Anti-Discrimination Comm. nor Elrod dealt with a application for an ex parte TRO. Moreover, the plaintiffs in both the cited cases were essentially prohibited from exercising their First Amendment rights of association *at all*.[6] Thus, discerning the constitutional injury was relatively straightforward.

---

[2] Fed. R. Civ. P. 65(b)(1)(A)-(B).

[3] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

[4] 427 U.S. 347, 373 (1976) (plurality opinion).

[5] 70 F.3d 1045, 1058 (9th Cir. 1995) (quoting Elrod).

[6] Elrod, 427 U.S. at 351 (plaintiffs were fired or faced being fired "solely because they did not support and were not members of the Democratic Party"); Am.-Arab Anti-Discrimination Comm., 70 F.3d at 1052-53 (plaintiffs imprisoned and threatened with deportation for membership in allegedly communist group).

In this case, by contrast, Plaintiffs are free to go right now to Griffith Observatory to proselytize and sell T-shirts.[7] The sole question at issue is whether they may be confined to a particular space set aside for such activities. (Mem. P. & A. at 17-22.) Based on the aerial photos and descriptions provided, the City appears to provide a space for Plaintiffs' activities that is alongside one major path of access to the Observatory the Court – not the location Plaintiffs would prefer, but not one which obviously deprives Plaintiffs of an audience.[8] (See, e.g., Decl. David Liberman, Ex. N (showing that the designated area is in view

---

[7] Plaintiffs also allege they are hindered because their "permit request has been languishing for *over* one year with no response." (Mem. P. & A. at 17:10-11.) The problem with this argument is that they present no evidence, of any kind, that the City *requires* them to obtain a permit before they can begin their religious/speech activities. The alleged "permit request" appears to be nothing more than Plaintiffs' attorney's communication with park rangers and the City Attorney's office. (Decl. David Liberman, ¶¶ 3-10 and related exhibits.) Nothing about these exchanges suggests that Plaintiffs were required to get a permit, or that Mr. Liberman's communications with various city officials actually constituted a required "permit request." The City *does* appear to require persons engaged in charitable solicitation to obtain an "Information Card" in accordance with city procedures. Los Angeles Municipal Code § 44.09(a). However, Plaintiffs appear to have no difficulty obtaining such cards. (Mem. P. & A. at 4-5.)

[8] A city is entitled to confine expressive activity to certain locations in a park, as long can show real reasons for doing so and those doing the expressing can still reach their audience:

> By delineating precise performance locations, the City can assure itself and park tenants that street performers are not blocking entrances, exits, and pathways . . . [and] reduce territorial disputes by eliminating uncertainty over the permissible boundaries of a given performance . . . .
>
> The only issue, then, is whether the location restriction leaves open ample alternative channels for communication. As we [have] explained . . . an alternative is not ample if the speaker is not permitted to reach the intended audience.

Berger v. City of Seattle, 569 F.3d 1029, 1049 (9th Cir. 2009) (citations omitted) (internal quotation marks omitted).

5

of the main plaza and located at the mouth of a large road on which many park patrons' cars are parked); Id., Exs. HH, JJ (showing park patrons in the area).) The Court therefore cannot yet say that Plaintiffs' facts "clearly show" that their First Amendment interests would be immediately and irreparably harmed absent a TRO. Fed. R. Civ. P. 65(b)(1).[9]

The Court therefore DENIES the Application for a TRO. In the interest of economy, the Court will not require Plaintiffs to submit a separate noticed motion, but GRANTS Plaintiffs' request for an Order to Show Cause. "If the TRO is denied, the Court may set the hearing on the order to show cause without regard to the twenty-eight (28) days notice of motion requirement of L.R. 6-1." L.R. 65-1. The Court will issue a separate Order to Show Cause in this matter.

IT IS SO ORDERED.

Dated: March 6, 2015

DEAN D. PREGERSON
United States District Judge

---

[9] An additional reason the Court denies the Application is that the injunction requested may be overly broad. An order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). The Court cannot discern from the language of Plaintiffs' proposed order whether the City could enforce *any* unwritten time, place, and manner restrictions on religious solicitation activities "on the public walkways and plaza areas of the Griffith Observatory." The effect of the proposed injunction appears to be substantially broader in scope than the complained-of policy, and the Court declines to issue such an open-ended injunction, at least without further inquiry.